**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | |
|---|---|
| SYLVIA BRUNI; TEXAS DEMOCRATIC PARTY; DSCC; DCCC; and JESSICA TIEDT, | |
| *Plaintiffs*, | |
| v. | CIVIL ACTION NO. 5:20-cv-00035 |
| RUTH R. HUGHS, in her official capacity as the Texas Secretary of State, | |
| *Defendant*. | |

**THE TEXAS SECRETARY OF STATE'S REPLY IN SUPPORT OF HER
MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER VENUE**

# TABLE OF CONTENTS

Table of Contents ............................................................................................................................ii

Table of Authorities.......................................................................................................................iii

Introduction......................................................................................................................................1

Argument ..........................................................................................................................................1

    I.    This Case Does Not Belong in the Southern District ............................................1

    II.    The Secretary Is Not a Proper Defendant............................................................4

        A.    Sovereign Immunity Bars Plaintiffs' Claims .............................................4

        B.    Plaintiffs Lack Article III Standing to Sue the Secretary .........................6

    III.    Plaintiffs Do Not Have Standing to Challenge HB 25 .........................................8

        A.    Plaintiffs' Generalized Partisan Interests Cannot Support Standing .......8

        B.    Plaintiffs' "Diversion of Resources" Does Not Support Standing .........9

        C.    Plaintiffs Do Not Have Associational Standing....................................10

        D.    Plaintiffs Cannot Rely on Third-Party Standing ...................................11

    IV.    Federal Law Does Not Mandate Straight-Ticket Voting....................................12

        A.    Plaintiffs' *Anderson-Burdick* Claims Fail .............................................13

        B.    Plaintiffs' Section 2 Results Claim Fails ................................................15

        C.    HB 25 is Neutral and Does Not Discriminate ........................................18

        D.    Plaintiffs' Viewpoint-Discrimination Claim Fails .................................19

    V.    Laches and Unclean Hands Bar Plaintiffs' Claims ............................................20

Conclusion ......................................................................................................................................21

TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Alexander v. Sandoval*,
  532 U.S. 275 (2001)................................................................................................17

*Allen v. Cooper*,
  140 S. Ct. 994 (2020).................................................................................................6

*Allen v. State Board of Elections*,
  393 U.S. 544 (1969)................................................................................................18

*Ancient Egyptian Arabic Order of Nobles of the Mystic Shrine v. Michaux*,
  279 U.S. 737 (1929)................................................................................................20

*Arellanes v. United States*,
  353 F.2d 270 (9th Cir. 1965)...................................................................................21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................10, 18

*Ballas v. Symm*,
  351 F. Supp. 876 (S.D. Tex. 1972), *aff'd*, 494 F.2d 1167 (5th Cir. 1974)............5

*Bd. of Trustees of Univ. of Ala. v. Garrett*,
  531 U.S. 356 (2001).................................................................................................6

*Bigham v. Envirocare of Utah, Inc.*,
  123 F. Supp. 2d 1046 (S.D. Tex. 2000) ..................................................................2

*Blankenship v. Blackwell*,
  341 F. Supp. 2d 911 (S.D. Ohio 2004)...................................................................21

*Bullock v. Calvert*,
  480 S.W.2d 367 (Tex. 1972).....................................................................................6

*Carrington v. Rash*,
  380 U.S. 89 (1965)..................................................................................................19

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)..................................................................................................9

*Comcast Corp. v. National Association of African American-Owned Media*,
  140 S. Ct. 1009 (2020) .........................................................................................9, 10

*Conservation Force v. Delta Air Lines, Inc.*,
  190 F. Supp. 3d 606 (N.D. Tex. 2016), *aff'd*, 682 F. App'x 310 (5th Cir. 2017)...............17

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
   543 U.S. 157 (2004) ................................................................................................. 3, 18

*Cortez v. Brad Drake Constr., LLC*,
   No. 3:15-cv-346, 2016 WL 1312636 (W.D. Tex. Apr. 4, 2016) ................................ 2

*Crawford v. Marion Cty. Election Bd.*,
   553 U.S. 181 (2008) ............................................................................................. 13, 19

*Daniel v. Am. Bd. of Emergency Med.*,
   428 F.3d 408 (2d Cir. 2005) ..................................................................................... 1

*Delancey v. City of Austin*,
   570 F.3d 590 (5th Cir. 2009) .................................................................................. 17

*Fair Elections Ohio v. Husted*,
   770 F.3d 456 (6th Cir. 2014) .................................................................................... 8

*Feldman v. Ariz. Sec'y of State's Office*,
   208 F. Supp. 3d 1074 (D. Ariz. 2016) ................................................................... 19

*Fowler v. Deloitte & Touche, LLP*,
   No. 5:15-cv-2695, 2017 WL 1293983 (W.D. La. Mar. 24, 2017) ........................... 2

*Frank v. Walker*,
   17 F. Supp. 3d 837 (E.D. Wis. 2014), *rev'd*, 768 F.3d 74 (7th Cir. 2014) ........... 17

*Frank v. Walker*,
   768 F.3d 744 (7th Cir. 2014) (Easterbrook, J.) ............................................... 15, 16

*Gault v. Yamunaji, L.L.C.*,
   No. 1:09-cv-78, 2009 WL 10699952 (W.D. Tex. Apr. 17, 2009) ........................... 2

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018) ............................................................................................. 8

*Gloria v. Hughs*,
   No. 5:20-cv-527, ECF 1 (W.D. Tex. Apr. 29, 2020) ............................................. 13

*Goff v. Hackett Stone Co.*,
   185 F.3d 874 (Table), No. 98-7137, 1999 WL 397409 (10th Cir. June 17, 1999)
   (per curiam) .............................................................................................................. 2

*Jacobson v. Fla. Sec'y of State*,
   No. 19-14552, 2020 WL 2049076 (11th Cir. Apr. 29, 2020) ........................ 7, 8, 20

*Jay v. Harris*,
   No. 3:07-cv-1544, 2007 WL 2019563 (N.D. Cal. July 9, 2007) ............................ 18

*Jenkins Brick Co. v. Bremer,*
   321 F.3d 1366 (11th Cir. 2003) ................................................................................... 1

*Kowalski v. Tesmer,*
   543 U.S. 125 (2004) ................................................................................................... 12

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,*
   624 F.3d 1083 (9th Cir. 2010) ................................................................................... 9

*League of Women Voters of Nassau Cty. v. Nassau Cty. Bd. of Sup'rs,*
   737 F.2d 155 (2d Cir. 1984) ..................................................................................... 12

*Leroy v. Great Western United Corp.,*
   443 U.S. 173 (1979) ..................................................................................................... 2

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
   572 U.S. 118 (2014) ................................................................................................... 17

*Lucas v. Townsend,*
   698 F. Supp. 909 (M.D. Ga. 1988), *aff'd*, 493 U.S. 1052 (1990) ............................ 16

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ................................................................................................... 11

*LULAC, Council No. 4434 v. Clements,*
   999 F.2d 831 (5th Cir. 1993) (en banc) ............................................................. 12, 15

*Mich. State A. Philip Randolph Inst. v. Johnson,*
   749 F. App'x 342 (6th Cir. 2018) (Kethledge, J., concurring) ............................... 12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
   473 U.S. 614 (1985) (Stevens, J., dissenting) ........................................................ 21

*Munro v. Socialist Workers Party,*
   479 U.S. 189 (1986) ................................................................................................... 14

*Nat'l Treasury Emps. Union v. United States,*
   101 F.3d 1423 (D.C. Cir. 1996) ................................................................................. 9

*National Council of La Raza v. Cegavske,*
   800 F.3d 1032 (9th Cir. 2015) ................................................................................. 11

*OCA-Greater Hous. v. Texas,*
   867 F.3d 604 (5th Cir. 2017) ................................................................................. 6, 7

*One Wis. Inst., Inc. v. Nichol,*
   186 F. Supp. 3d 958 (W.D. Wis. 2016) ................................................................... 18

*One Wis. Inst., Inc. v. Thomsen,*
    198 F. Supp. 3d 896 (W.D. Wis. 2016) ............................................. 15

*Personnel Administrator of Mass. v. Feeney,*
    442 U.S. 256 (1979) ............................................................................ 18

*Skilling v. United States,*
    561 U.S. 358 (2010) .............................................................................. 3

*Steadfast Ins. Co. v. Pop Restaurants, LLC,*
    No. 4:09-cv-3148, 2010 WL 3155923 (S.D. Tex. Aug. 10, 2010) ....... 2

*Steen v. Murray,*
    770 F.3d 698 (8th Cir. 2014) ............................................................... 1

*Sullivan v. Hous. Indep. Sch. Dist.,*
    475 F.2d 1071 (5th Cir. 1973) ........................................................... 20

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ..................................................................... 10, 11

*Tex. Democratic Party v. Abbott,*
    5:20-cv-438, ECF 10 (W.D. Tex. Apr. 29, 2020) .............................. 13

*Texas Democratic Party v. Benkiser,*
    459 F.3d 582 (5th Cir. 2006) ........................................................... 8, 9

*Thompson v. Spear,*
    91 F.2d 430 (5th Cir. 1937) .............................................................. 20

*Thornburg v. Gingles,*
    478 U.S. 30 (1986) ............................................................................ 15

*Timmons v. Twin Cities Area New Party,*
    520 U.S. 351 (1997) .......................................................................... 14

*Twin Cities Area New Party v. McKenna,*
    73 F.3d 196 (8th Cir. 1996) .............................................................. 14

*Udeobong v. Hawkins,*
    No. 4:08-cv-1833, 2009 WL 7326072 (S.D. Tex. Feb. 19, 2009) ..... 3, 4

*Veasey v. Abbott,*
    830 F.3d 216 (5th Cir. 2016) (en banc) ............................................ 15

*Veasey v. Abbott,*
    870 F.3d 387 (5th Cir. 2017) (per curiam) ....................................... 20

*Veasey v. Perry*,
    29 F. Supp. 3d 896 (S.D. Tex. 2014) .................................................................18

*White v. Daniel*,
    909 F.2d 99 (4th Cir. 1990) .................................................................................20

*Woodke v. Dahm*,
    70 F.3d 983 (8th Cir. 1995) ...............................................................................1, 2

**Statutes**

28 U.S.C. § 1391(b)(2) ............................................................................................. 1, 3, 4

52 U.S.C.
    § 10301(a) ....................................................................................................... 16, 17
    § 10301(b) ............................................................................................................15

Tex. Elec. Code
    § 31.003...................................................................................................................5
    § 31.004...................................................................................................................5
    § 31.012(b-1)...........................................................................................................5
    § 31.012(d)..............................................................................................................5
    § 52.002...................................................................................................................7
    § 82.001(a)..............................................................................................................2
    § 221.003(a)............................................................................................................7
    § 232.002................................................................................................................7

**Other Authorities**

5B Charles Alan Wright, *et al.*, *Federal Practice & Procedure* § 1352 (3d ed.) ................4

Br. for the United States as Amicus Curiae in *Walden v. Fiore*,
    No. 12-574, 2013 WL 2445027 (U.S. June 4, 2013).............................................2

Fed. R. Civ. P. 12(h)(1)..................................................................................................3

Office of the Secretary of State, 2010 General Election,
    https://elechist.sos.state.tx.us/elchist154_state.htm ............................................9

Office of the Secretary of State, 2012 General Election,
    https://elechist.sos.state.tx.us/elchist164_state.htm ............................................9

Office of the Secretary of State, 2014 General Election,
    https://elechist.sos.state.tx.us/elchist175_state.htm ............................................9

Office of the Secretary of State, 2016 General Election
    https://elechist.sos.state.tx.us/elchist319_state.htm ............................................9

Office of the Secretary of State, 2016 General Election: Webb County Race
  Summary https://elections.sos.state.tx.us/elchist319_county240.htm ..............................................8

Office of the Secretary of State, 2018 General Election,
  https://elections.sos.state.tx.us/elchist331_state.htm .........................................................................9

Office of the Secretary of State, 2018 General Election: Webb County Race
  Summary, https:// elections.sos.state.tx.us/elchist331_county240.htm ...........................................8

Order on Appl. for Temp. Injs. and Plea to the Juris., *Tex. Democratic Party v.
  DeBeauvior*, D-1-GN-20-001610, (Tex. Dist. [Travis] Apr. 17, 2020) ...............................................13

## INTRODUCTION

Plaintiffs ask this Court to declare that the country's predominate method of selecting candidates violates the Constitution. Forty-three other States do not permit straight ticket voting. Numerous courts have upheld repeals of straight ticket voting, and no court has ever required a State to offer straight ticket voting. Indeed, Plaintiffs relegate to a mere footnote the 2018 opinion from the U.S. Court of Appeals for the Sixth Circuit rejecting nearly identical claims. Plaintiffs boldly invite this Court to chart a new path. Nothing in their response to the Secretary of State's motion to dismiss should cause the Court to accept that invitation.

Even putting the merits to one side, Plaintiffs' suit is fundamentally flawed. They cannot sue in the Southern District because nothing related to this case has occurred in this district. Plaintiffs cannot sue the Secretary because she does not enforce the provisions of HB 25 that they seek to challenge. And they cannot challenge HB 25 because the law does not injure them.

## ARGUMENT

## I.    This Case Does Not Belong in the Southern District

Plaintiffs decided to sue the Texas Secretary of State, not a county election official. Venue is improper because no "substantial part of the events or omissions giving rise to the claim" against the Secretary "occurred" in the Southern District. 28 U.S.C. § 1391(b)(2). The Secretary has not (and will not) take any official actions related to HB 25 in the Southern District. *See* ECF 32 at 6–7.

Section 1391(b)(2) "require[s] courts to focus on relevant activities of the defendant, not of the plaintiff." *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995). Plaintiffs acknowledge the Eighth Circuit caselaw requiring this but wrongly suggest other courts disagree. *See* ECF 47 at 4. In fact, other courts of appeals have expressly agreed with *Woodke*. *See Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014) (describing "decisions of our sister circuits agreeing with *Woodke*"); *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371–72 (11th Cir. 2003) ("[W]e approve of cases such as *Woodke*."); *Daniel v. Am. Bd.*

*of Emergency Med.*, 428 F.3d 408, 432–34 (2d Cir. 2005) (citing *Woodke* and *Jenkins* with approval); *Goff v. Hackett Stone Co.*, 185 F.3d 874 (Table), No. 98-7137, 1999 WL 397409, at *1 (10th Cir. June 17, 1999) (per curiam) (relying on *Woodke*). This Court approved of *Woodke* in *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000), which courts throughout the Circuit have followed.[1]

These courts are faithfully applying Supreme Court precedent. In *Leroy v. Great Western United Corp.*, the court of appeals had held that a "claim arose" in the Northern District of Texas because "that is where [a] statute had its impact on" the plaintiff. 443 U.S. 173, 186 (1979). But the Supreme Court reversed. Even assuming a claim could arise in multiple districts, the Court concluded that "the claim involved has only one obvious locus—the District of Idaho"—because that is where "the enactment of the statute by the legislature" and other governmental actions had taken place. *Id.* at 185. The Court rejected any "reasoning [that] would subject the Idaho officials to suit in almost every district in the country." *Id.* at 186.[2]

If Plaintiffs were right that they could institute suit wherever "the effects of" HB 25 were felt, ECF 47 at 4, the Secretary could presumably be sued anywhere in the country, the same result *Leroy* rejected. Some Texas voters can vote by mail from outside the State. *See* Tex. Elec. Code § 82.001(a). Under Plaintiffs' theory, they could have filed this suit in the District of Alaska, so long as they recruited a Texas voter planning to vote from his dorm room at the University of Alaska. To be sure, Laredo is not as inconvenient as Fairbanks, but because Plaintiffs' interpretation would allow for

---

[1] *See, e.g.*, *Fowler v. Deloitte & Touche, LLP*, No. 5:15-cv-2695, 2017 WL 1293983, at *2 (W.D. La. Mar. 24, 2017) (relying on *Bigham*, *Woodke*, and *Jenkins*); *Cortez v. Brad Drake Constr., LLC*, No. 3:15-cv-346, 2016 WL 1312636, at *2 (W.D. Tex. Apr. 4, 2016) (citing *Bigham* and focusing on "the defendant's conduct"); *Gault v. Yamunaji, L.L.C.*, No. 1:09-cv-78, 2009 WL 10699952, at *5 (W.D. Tex. Apr. 17, 2009) (holding that Section "1391(b)(2) requires courts to focus on the **defendant's** conduct alone" and citing *Bigham*); *see also Steadfast Ins. Co. v. Pop Restaurants, LLC*, No. 4:09-cv-3148, 2010 WL 3155923, at *10 n.6 (S.D. Tex. Aug. 10, 2010).

[2] As the U.S. Solicitor General has explained, the subsequent legislative changes to Section 1391 "did nothing to undermine *Leroy*'s reasoning or its holding." Br. for the United States as Amicus Curiae in *Walden v. Fiore*, No. 12-574, 2013 WL 2445027, at *25 (U.S. June 4, 2013).

either, it negates "the purpose of statutorily specified venue": "to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy*, 443 U.S. at 183–84.

Plaintiffs wrongly claim the Secretary's approach would render Section 1391(b)(2) superfluous. *See* ECF 47 at 4–5. Superfluity would occur only if the provisions *always* pointed to the same district. Mere "[o]verlap with other federal statutes does not render [a provision] superfluous." *Skilling v. United States*, 561 U.S. 358, 413 n.45 (2010). Although paragraphs (b)(1) and (b)(2) both point toward the Western District in this case, they often point to different districts. For example, in a suit against a traveling salesman, venue might be proper where he resides as well as where he made the sale at issue.

Plaintiffs also argue venue must be proper in the Southern District because a contrary ruling would "produce the plainly incorrect result that no suit challenging a statewide election law could be litigated anywhere but the Western District." ECF 47 at 5. Not so. In a suit challenging a local official's implementation of an election law, venue might be proper wherever that official acts. *See* 28 U.S.C. § 1391(b)(2). But Plaintiffs chose to sue the Secretary. The Secretary has not taken any official actions regarding HB 25, but to the extent she does in the future, those actions will take place in the Western District (and will not "giv[e] rise to the claim" against her).

Plaintiffs' reliance on cases in which venue was not raised is misplaced. *See* ECF 47 at 5. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (quotation omitted). That is especially true for venue because it is waivable. *See* Fed. R. Civ. P. 12(h)(1).

Finally, Plaintiffs rely on an unpublished opinion from this Court disagreeing with *Woodke. See* ECF 47 at 4 (citing *Udeobong v. Hawkins*, No. 4:08-cv-1833, 2009 WL 7326072, at *2 (S.D. Tex. Feb. 19, 2009)). But even if the Court followed *Udeobong* by "focus[ing] its analysis on the chain of events that led up to and includes the claim at issue rather than a narrow focus on the actions of the

defendant," 2009 WL 7326072, at *2, it would not help Plaintiffs here. First, Plaintiffs rely on future

events, *see* ECF 47 at 5, but the statute requires events that have already "occurred." 28 U.S.C.

§ 1391(b)(2). Second, Plaintiffs argue that Plaintiff Bruni's efforts have effects on "Webb County

voters," but they never argue those efforts take place in Webb County. ECF 47 at 5. Thus, even under

*Udeobong*, Plaintiffs have not carried their burden.[3]

Even if venue in the Southern District were proper, it would not be convenient. *See* ECF 32

at 7–9. Plaintiffs do not dispute that all of the following are in the Western District: the Secretary and

her records, the Legislature and its records, Plaintiff TDP and its records, as well as Plaintiff Tiedt and

her records. Regarding court congestion, Plaintiffs criticize the Secretary for "ignor[ing] the fact that

more judges sit in this District than the Western District." *Id.* at 7. But dividing the number of pending

cases by the number of active district judges does not change the math. The Southern District has

considerably more cases per judge than the Western District does.[4]

## II.     The Secretary Is Not a Proper Defendant

Plaintiffs did not sue a statute. They sued the Secretary. But they do not actually complain

about anything the Secretary does. As a result, this is not a case within this Court's jurisdiction.

### A.     Sovereign Immunity Bars Plaintiffs' Claims

Plaintiffs acknowledge that sovereign immunity bars this suit unless the Secretary has sufficient

connection to the enforcement of HB 25's elimination of straight ticket voting. *See* ECF 47 at 9; ECF

---

[3] Plaintiffs dispute that they have the burden of establishing venue. *Compare* ECF 32 at 6, *with* ECF 47 at 4. Although district courts have "divided over which party bears the burden of proof with regard to venue after a Rule 12(b)(3) motion has been made," one of Plaintiffs' own cases recognizes that "[t]he view that the burden should be placed on the plaintiff has been gaining approval." *Udeobong*, 2009 WL 7326072, at *2 (placing the burden on the plaintiff). Wright and Miller agree, explaining that "it is the plaintiff's obligation to institute his action in a permissible forum, both in terms of jurisdiction and venue." 5B Charles Alan Wright, *et al.*, *Federal Practice & Procedure* § 1352 (3d ed.).

[4] The Southern District's 15,217 cases divided by 18 active district judges is about 845 cases per judge. The Western District's 9,053 cases divided by 13 active district judges is about 696 cases per judge. *See* ECF 32 at 8 n.14.

32 at 11. Plaintiffs never contend that the Secretary prepares any actual ballots—because she does not. Therefore, she is not the official who determines whether to include a straight ticket option. In the absence of that direct enforcement, Plaintiffs point to three purported connections between the Secretary and HB 25. But none is valid.

First, Plaintiffs claim the Secretary "must 'adopt rules and establish procedures' to effectuate its elimination of STV." ECF 47 at 10. That is incorrect. Local officials are legally obligated to effectuate the elimination of straight ticket voting even if the Secretary never adopts any rules or establishes any procedures. The Secretary's rules and procedures will "ensure that voters and county election administrators are not burdened by the implementation," but they will not enforce the elimination of straight ticket voting. Tex. Elec. Code § 31.012(d); *see also* ECF 32 at 10.

Second, Plaintiffs argue the Secretary "must instruct counties and voters that STV may no longer be included on Texas's ballots." ECF 47 at 10. Again, that is not true. The Secretary will provide "*notice* that straight ticket voting has been eliminated." Tex. Elec Code § 31.012(b-1) (emphasis added). Even if they did not receive such notice, local officials would still be obligated to follow HB 25.

Third, Plaintiffs contend the Secretary "must 'obtain and maintain uniformity' in HB 25's 'application, operation, and interpretation.'" ECF 47 at 10. True, the Secretary tries to obtain and maintain uniformity, *see* Tex. Elec. Code § 31.003, but the Legislature has given her limited powers to do so. For example, she "assist[s] and advise[s] all election authorities with regard to the application, operation, and interpretation of this code" and "maintain[s] an informational service for answering inquiries of election authorities relating to the administration of the election laws or the performance of their duties." *Id.* § 31.004. But the statutory charge to achieve and maintain uniformity does not mean she implements every single provision of the Election Code.

Nor does it give her authority to control the actions of local officials. *See Ballas v. Symm*, 351 F. Supp. 876, 891 (S.D. Tex. 1972), *aff'd*, 494 F.2d 1167 (5th Cir. 1974) (explaining that the Secretary's

"uniformity" power provided "no authority to issue binding legal interpretations of the statute"). In *Bullock v. Calvert*, the Secretary claimed to have certain "implied" powers because, without those powers, "uniformity cannot be obtained." 480 S.W.2d 367, 369, 372 (Tex. 1972). The Texas Supreme Court rejected that argument. In an opinion by then-Justice Reavley (a former Secretary of State and current Circuit Judge), the court refused to "read into [Texas law] a delegation of authority to care for any breakdown in the election process." *Id.*

For these reasons, the logic of *Ex parte Young* does not apply. Plaintiffs want an injunction preventing the elimination of straight ticket voting. The Secretary will not eliminate straight ticket voting, so an injunction against her cannot help Plaintiffs. That the Secretary implements other aspects of HB 25 is irrelevant because Plaintiffs are not challenging those aspects of HB 25. *See* ECF 32 at 10.

Plaintiffs also argue that "the VRA abrogates sovereign immunity." ECF 47 at 10. That argument does not affect their constitutional claims. Even for Plaintiffs' VRA claims, abrogation is analyzed provision-by-provision, not for statutes as a whole. *See, e.g.*, *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 n.1 (2001) (noting that whether Title I and Title II of the ADA could validly abrogate sovereign immunity were separate questions). Because the abrogation analysis "focuses on the legislative record," *Allen v. Cooper*, 140 S. Ct. 994, 1004 (2020), whether a later-enacted provision can abrogate sovereign immunity does not answer whether an earlier-enacted provision can. For these reasons, *OCA*'s holding regarding Section 208, which was enacted in 1984, does not apply to Section 2, which was enacted in 1965. *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 607 (5th Cir. 2017) ("This appeal concerns a more recent, and less visible, addition to the VRA.").

## B.     Plaintiffs Lack Article III Standing to Sue the Secretary

Plaintiffs do not seriously contend that the Secretary's actions will cause their alleged injuries. Plaintiffs argue that their injuries are attributable to the omission of a straight ticket option on the ballot. But Texas law charges local officials, not the Secretary, with omitting a straight ticket option

when "hav[ing] the official ballot prepared." Tex. Elec. Code § 52.002. As the Eleventh Circuit recently explained, a plaintiff does not have standing to sue a Secretary of State for the actions of local officials. *See Jacobson v. Fla. Sec'y of State*, — F.3d —, No. 19-14552, 2020 WL 2049076, at \*9 (11th Cir. Apr. 29, 2020) (holding that the plaintiffs lacked standing because state "law tasks [local officials], independently of the Secretary, with printing the names of candidates on ballots").

Plaintiffs point to the Secretary's authority to adopt rules and notify local officials about HB 25, *see* ECF 47 at 8, but as explained above, they mischaracterize the Secretary's actual authority. *See supra* Part II. In any event, Plaintiffs claim only that the Secretary has "involvement" with HB 25, not that their alleged injures are fairly traceable to the Secretary's "involvement." ECF 47 at 8.

Plaintiffs also never explain how relief against the Secretary could redress their alleged injuries. An injunction preventing the Secretary from eliminating straight ticket voting would not have any real-world effect because the Secretary will not eliminate straight ticket voting regardless. Local officials' implementation of HB 25 will accomplish that result no matter what the Secretary does. *See Jacobson*, 2020 WL 2049076, at \*10 ("An injunction ordering the Secretary not to follow the ballot statute's instructions for ordering candidates cannot provide redress, for neither she nor her agents control the order in which candidates appear on the ballot.").

Plaintiffs do not respond to any of this. Instead, they rely entirely on *OCA-Greater Houston*. *See* ECF 47 at 7–9. That case found standing to sue the Secretary only because it did not involve a private cause of action. *See OCA-Greater Hous.*, 867 F.3d at 613 (distinguishing *Okpalobi* on that ground). But this case does involve a private right of action, so it is closer to *Okpalobi* than *OCA*. As the Secretary previously explained, although she does not enforce HB 25 against local officials, in appropriate circumstances a losing candidate can do so through an election contest. *See* Tex. Elec. Code §§ 221.003(a), 232.002. Plaintiffs offer no response to that distinction.

### III.    Plaintiffs Do Not Have Standing to Challenge HB 25

#### A.    Plaintiffs' Generalized Partisan Interests Cannot Support Standing

Plaintiffs claim an interest in "turning out voters and electing Democrats," ECF 47 at 11, but that cannot support Article III standing. Plaintiffs have not plausibly alleged an injury in fact because they seek to "vindicate[e] generalized partisan preferences." *Gill v. Whitford*, 138 S. Ct. 1916, 1933 (2018); *see* ECF 32 at 13–14.

Since the Secretary filed her motion to dismiss, the Eleventh Circuit has decided this very issue. It rejected the same asserted injuries from some of the same Plaintiffs represented by some of the same counsel: "The organizations also contend that the ballot statute injures them by harming their mission of electing Democrats, but that harm is not a cognizable injury." *Jacobson*, 2020 WL 2049076, at *9. Similarly, the "abstract social interest in maximizing voter turnout . . . . cannot confer Article III standing." *Fair Elections Ohio v. Husted*, 770 F.3d 456, 461 (6th Cir. 2014).[5]

Even if generalized partisan interests could suffice in some case, they would not here. Plaintiffs do not argue (much less plausibly allege) that HB 25 will affect the outcome of a single election. To be sure, Plaintiffs' response refers to their "electoral prospects," ECF 47 at 13–14, but it never argues that HB 25 will be outcome determinative for any election, much less an identifiable one. The same is true for Plaintiffs' complaint, which focuses on the alleged effects on voters, not election outcomes. *See, e.g.*, ECF 16 ¶ 56. For example, Plaintiffs focus on Webb County, *see* ECF 47 at 17, but Webb County consistently favors Democratic candidates. Democratic candidates overwhelmingly won Webb County in both 2016 and 2018, with many local Democratic candidates running unopposed.[6]

---

[5] To the extent cases like *Texas Democratic Party v. Benkiser* allow standing based on "election prospects," 459 F.3d 582, 586 (5th Cir. 2006), they have been overturned by *Gill*, 138 S. Ct. at 1931 (rejecting standing based on an alleged interest in "collective representation in the legislature").

[6] Office of the Secretary of State, 2018 General Election: Webb County Race Summary, https://elections.sos.state.tx.us/elchist331_county240.htm; Office of the Secretary of State, 2016 General Election: Webb County Race Summary https://elections.sos.state.tx.us/elchist319_county240.htm.

Plaintiffs do not contend HB 25 will change that. Thus, Plaintiffs' generalized partisan interest in "turning out voters and electing Democrats" is not implicated here. ECF 47 at 11. So even if cases like *Benkiser* remained good law, they would be irrelevant. *See* 459 F.3d at 586 (discussing evidence of a particular candidate's chances of winning a particular election).[7]

## B.  Plaintiffs' "Diversion of Resources" Does Not Support Standing

Plaintiffs also claim standing based on "a diversion of organizational resources to identify and counteract HB 25's unlawful action." ECF 47 at 11. As the Secretary previously explained, "[a] plaintiff 'cannot manufacture standing by choosing to make expenditures based on' an alleged harm that is not itself an injury in fact." ECF 32 at 15 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013)). A diversion of resources is not a cognizable injury in fact unless the plaintiff "would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).

Here, Plaintiffs have not plausibly alleged that HB 25 would injure them absent a diversion of resources, so diverting resources cannot itself be an injury in fact. It is, at most, "a self-inflicted injury." ECF 32 at 17 (quoting *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996)). Plaintiffs offer no response to this argument.

Plaintiffs try to distinguish "cases from beyond the pleading stage," ECF 47 at 13, but they ignore *Comcast Corp. v. National Association of African American-Owned Media*, in which the Supreme Court

---

[7] Plaintiffs do not allege that HB 25 affects the likelihood of Plaintiff Tiedt being elected in District 20, which has consistently elected Republican candidates by large margins. *See* Office of the Secretary of State, 2018 General Election, https://elections.sos.state.tx.us/elchist331_state.htm (Republican defeated Democrat 71.5% to 28.5%); Office of the Secretary of State, 2016 General Election https://elections.sos.state.tx.us/elchist319_state.htm (Republican unopposed); Office of the Secretary of State, 2014 General Election, https://elections.sos.state.tx.us/elchist175_state.htm (Republican defeated Democrat 73.33% to 22.73%); Office of the Secretary of State, 2012 General Election, https://elections.sos.state.tx.us/elchist164_state.htm (Republican unopposed); Office of the Secretary of State, 2010 General Election, https://elections.sos.state.tx.us/elchist154_state.htm (Republican defeated Libertarian 82.55% to 17.45%).

explained that "the essential elements of a claim remain constant through the life of a lawsuit." 140 S. Ct. 1009, 1014 (2020). "What a plaintiff must do to satisfy those elements may increase as a case progresses from complaint to trial, but the legal elements themselves do not change." *Id.* "So, to determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end." *Id.*

### C. Plaintiffs Do Not Have Associational Standing

Plaintiffs do not have associational standing for at least three reasons. First, they have not alleged facts demonstrating that they have members for purposes of associational standing. *See* ECF 32 at 16–17. Plaintiffs do not claim they have. *See* ECF 47 at 15. They instead rely on a conclusory assertion of having "members, volunteers, and constituents," ECF 16 ¶¶ 21–23, without alleging the factual underpinnings of such a conclusion. *See* ECF 32 at 16. But conclusory allegations "are not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

Second, Plaintiffs have not identified any members. *See* ECF 32 at 16. Recognizing their complaint contains no relevant allegations, they point to three declarations from individual voters attached to their motion for a preliminary injunction. *See* ECF 47 at 16 (citing ECF 19-6). But none of those declarants even claimed to be associated with the Democratic Party, much less established formal membership in one of the Plaintiff organizations. *See* ECF 19-6 (Exs. 5–7).

Plaintiffs also argue that their large number of "members and constituents" makes an injury to one of them is statistically likely. ECF 47 at 16. Rejecting that exact reasoning, *Summers v. Earth Island Institute* "required plaintiffs . . . to identify members who have suffered the requisite harm." 555 U.S. 488, 499 (2009). The *dissent* would have "accept[ed] the organization's self-description of the activities of its members" and then determined whether "there is a statistical probability that some of those members are threatened with concrete injury." *Id.* at 497. But the majority explained the "requirement of naming the affected members has never been dispensed with in light of statistical

10

probabilities." *Id.* at 498–99. Even when "it is certainly possible—perhaps even likely—that one" member would have standing, "that speculation does not suffice." *Id.* at 499.

Plaintiffs claim *Summers* and its progeny do not apply at the pleading stage. *See* ECF 47 at 15–16. As discussed above, *Comcast* rejects Plaintiffs' argument that they need not allege a fact they must later prove (in this case, the identity of an affected member). *See* 140 S. Ct. at 1014. Moreover, the Secretary cited three court of appeals decisions, including one authored by Justice Souter, requiring plaintiffs to identify members in their complaints. *See* ECF 32 at 16. Plaintiffs do not attempt to distinguish those cases. Instead, they rely on *dicta* from *National Council of La Raza v. Cegavske*, 800 F.3d 1032 (9th Cir. 2015), that did not purport to resolve this issue. That case held that the plaintiffs had organizational standing, not associational standing. *See id.* at 1039–41. Indeed, the Ninth Circuit, uncertain of how to interpret *Summers*, simply noted that the plaintiffs there should have been granted leave to amend to fix any *Summers* problem. *See Nat'l Council of La Raza*, 800 F.3d at 1041.

Third, even if Plaintiffs had identified a voter, they have not plausibly alleged a prospective injury. Indeed, the speculative nature of any injury is why the identification of an allegedly injured voter is so important. Any injury depends on speculation about the actions of various third parties, including local officials, whose decisions will determine whether voters face long lines to vote, *see* ECF 32 at 9–10, 14, as Plaintiffs concede, *see* ECF 47 at 38. Plaintiffs have not met their burden of plausibly alleging "that those [local officials'] choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 562 (1992).

## D.    Plaintiffs Cannot Rely on Third-Party Standing

Plaintiffs argue that the bar on third-party standing does not apply because they have established associational standing. *See* ECF 47 at 16–17. As an initial matter, Plaintiffs do not have associational standing, so their argument fails on its own terms. *See supra* Part III.C. Plaintiffs offer no argument for how their claims can survive the bar on third-party standing to the extent they rely on

organizational rather than associational standing to satisfy Article III. Moreover, Plaintiffs do not cite any Fifth Circuit case expressly considering whether Section 1983's bar on third-party standing foreclosed associational standing.  When the Second Circuit considered that question, it held that an associational plaintiff "does not have standing to assert the rights of its members" because "the rights [Section 1983] secures [are] personal to those purportedly injured." *League of Women Voters of Nassau Cty. v. Nassau Cty. Bd. of Sup'rs*, 737 F.2d 155, 160 (2d Cir. 1984).

More fundamentally, Plaintiffs seem to think the bar on third-party standing applies only when "an *individual* seek[s] to assert a claim on behalf another individual." ECF 47 at 17 n.5. On the contrary, it applies when any plaintiff relies on "the rights of others," even if the plaintiff has suffered its own injury in fact. *Kowalski v. Tesmer*, 543 U.S. 125, 129 & n.2 (2004). Plaintiffs do not dispute that all of their "claims depend on the right to vote" and that none of them has alleged being a registered voter. ECF 32 at 18. Nor do Plaintiffs dispute that they have not invoked any prudential exception to the bar on third-party standing. *See* ECF 32 at 18–19.

## IV.    Federal Law Does Not Mandate Straight-Ticket Voting

Plaintiffs cannot escape the fact that forty-three other States do not allow straight ticket voting. *See* ECF 32 at 19. Nor can they deny that "[n]one of [those states' laws] have ever been declared unconstitutional." *Mich. State A. Philip Randolph Inst. v. Johnson*, 749 F. App'x 342, 355 (6th Cir. 2018) (Kethledge, J., concurring). Plaintiffs argue that "the lack of straight-party voting in other states" is "not enough" for the Secretary to prevail, ECF 47 at 19, but the *en banc* Fifth Circuit has recognized that the importance of the State's interest "is bolstered by the recognition and pursuit of the" same "interest in other states." *LULAC, Council No. 4434 v. Clements*, 999 F.2d 831, 872 (5th Cir. 1993) (en banc).

### A.   Plaintiffs' *Anderson-Burdick* Claims Fail

#### 1.   HB 25 Does Not Burden the Right to Vote

Requiring voters to make individual selections (rather than vote a straight ticket) is not a cognizable burden. To the extent it is a burden at all, it represents no more than "the usual burdens of voting." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 198 (2008) (plurality); *id.* at 209 (Scalia, J., concurring in the judgment); *see* ECF 32 at 20. Plaintiffs argue that HB 25 will lead to longer lines and increased roll off, *assuming everything else is held equal. See, e.g.*, ECF 47 at 20.[8] But Plaintiffs do not, and cannot, plausibly allege that everything else will be held equal in 2020.

Plaintiffs concede that the actions of local officials could offset any such effects HB 25 might have. *See* ECF 32 at 9–10, 14, 20–21; ECF 47 at 38 (arguing that counties with "funding" could "mitigate the law's expected harms"). But they fail to allege how those third parties, who are not before this Court, will react. If local officials use the tools available to them under the Election Code, they can prevent long lines and improper roll off. *See id.* at 20–21.

Plaintiffs also argue that only "a tiny fraction of Texans [are eligible] to vote by mail." ECF 47 at 20–21. But some of these same Plaintiffs and some of the same counsel have secured a state-court order purporting to authorize many more Texans to vote by mail. *See* Exhibit A (Order on Appl. for Temp. Injs. and Plea to the Juris., *Tex. Democratic Party v. DeBeauvoir*, D-1-GN-20-001610, (Tex. Dist. [Travis] Apr. 17, 2020)). In fact, they are also involved in at least two other federal cases that seek similar relief. *See Tex. Democratic Party v. Abbott*, 5:20-cv-438, ECF 10 (W.D. Tex. Apr. 29, 2020); *Gloria v. Hughs*, No. 5:20-cv-527, ECF 1 (W.D. Tex. Apr. 29, 2020). Plaintiffs seeking (and obtaining) judicial relief to expand vote-by-mail eligibility cannot base their challenge to HB 25 on such eligibility being

---

[8] As will be explained in the Secretary's response to Plaintiffs' motion for a preliminary injunction, Plaintiffs have not (and cannot) meet their burden to prove that HB 25 will increase wait times and roll off.

more limited.

In short, Plaintiffs' assertions regarding the effects of HB 25 are conclusory because they have not alleged facts establishing the context in which HB 25 will go into effect. Thus, Plaintiffs do not plausibly allege that HB 25 will burden even a subset of voters, much less that it will burden voters categorically. *See* ECF 42-2 at 5–8; ECF 32 at 21–22.

### 2.    HB 25 Furthers Important State Interests

"Plaintiffs do not dispute" the legitimacy of the State's interests; instead, they argue HB 25 "does not serve those interests." ECF 47 at 22. They adopt the approach of the Eighth Circuit in *Twin Cities Area New Party v. McKenna*, where the court accepted the validity of the State's interests but concluded the statute was "broader than necessary" and faulted the State for a lack of "evidence." 73 F.3d 196, 199–200 (8th Cir. 1996). But the Supreme Court reversed. It criticized the lower court's analysis of whether the law "was narrowly tailored" and held that courts should not "require elaborate, empirical verification of the weightiness of the State's asserted justifications." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997).

This Court is not tasked with determining whether the State interests behind HB 25 are backed by "elaborate, empirical verification." *Id.* The Legislature has "respond[ed] to potential deficiencies in the electoral process with foresight," as the Supreme Court expressly permits. *Munro v. Socialist Workers Party*, 479 U.S. 189, 195 (1986). Thus, Plaintiffs' complaints about "factual dispute[s]" are irrelevant. ECF 47 at 23. If Plaintiffs were right that the State had to factually "prove" its interests, it "would invariably lead to endless court battles over the sufficiency of the 'evidence' marshaled by a State"— a result the Supreme Court has rejected. *Munro*, 479 U.S. at 195. Thus, courts do not hold States "to the burden of demonstrating empirically the objective effects" of their election laws. *Id.* That is why

courts frequently decide *Anderson-Burdick* claims on a motion to dismiss. *See* ECF 32 at 24.[9]

**B.      Plaintiffs' Section 2 Results Claim Fails**

**1.      Section 2 Does Not Require Straight Ticket Voting**

Plaintiffs failed to plausibly allege that any disadvantages minority voters face is "on account of race or color." *LULAC*, 999 F.2d at 850 (quoting Section 2); *see* ECF 32 at 28–29. Plaintiffs rely on *Veasey v. Abbott*, but that opinion reflects the same requirement. *See* 830 F.3d 216, 253 (5th Cir. 2016) (en banc) (asking "whether any such abridgement is linked to social and historical conditions of discrimination such that the abridgement has occurred 'on account of race'"). Plaintiffs cannot satisfy this requirement because "everyone has the same opportunity to" vote by making individual selections. *Frank v. Walker*, 768 F.3d 744, 755 (7th Cir. 2014) (Easterbrook, J.).

Plaintiffs also did not plausibly allege that HB 25 will be "responsible for minority voters' inability to elect [their preferred] candidates." *Thornburg v. Gingles*, 478 U.S. 30, 50 (1986); *see* ECF 32 at 28. Plaintiffs argue they need not allege "HB 25 will actually prevent minority voters from electing candidates of their choice" because they bring a claim under *Veasey*, not "a vote-dilution claim." ECF 47 at 27.[10] But *Veasey* itself asks whether "members of the protected class have less opportunity . . . to elect representatives of their choice." 830 F.3d at 244; *see also* 52 U.S.C. § 10301(b) ("less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice").

---

[9] Plaintiffs seem to have misunderstood the State's interest in preventing accidental roll off by straight-party voters who overlook "non-partisan down-ballot items." ECF 32 at 22–23. Regardless of whether eliminating straight ticket voting will lead to some voters *choosing* not to vote in down-ballot partisan races, as Plaintiffs argue, *see* ECF 47 at 23, the State has an interest in preventing voters from *accidentally* failing to vote on down-ballot non-partisan items. *See One Wis. Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896, 946 (W.D. Wis. 2016) (crediting a State's "reasonable" interest in "ensur[ing] that voters do not accidentally overlook items on a ballot" even absent "evidence of how often these problems occur").

[10] Plaintiffs' assertion that they do not bring a vote-dilution claim affirmatively waives any such claim. *See* ECF 47 at 27.

Plaintiffs do not allege that minority voters "have less 'opportunity' than" white voters to vote without a straight ticket option. *Frank*, 768 F.3d at 753. Instead, Plaintiffs argue "that, because [minority voters] have lower income" and certain other socioeconomic conditions, they "are less likely to *use* that opportunity." *Id.* But "that does not violate § 2." *Id.* Plaintiffs' claim therefore fails.

Plaintiffs argue that analyzing minority voters' ability to elect candidates of their choice would mean a State could "completely prohibit minorities from voting so long as those voters were previously unable to elect their candidates of choice." ECF 47 at 27. That is not true. Such a law would be intentionally discriminatory, and therefore a violation of both Section 2 and the Constitution. But contrary to Plaintiffs' suggestion, there is nothing strange about a Section 2 *results* claim failing when Plaintiffs do not plausibly allege any effect on electoral results.

Finally, if Plaintiffs' claim succeeds, it will stretch Section 2 beyond the constitutional breaking point. A statute that requires Texas to offer straight ticket voting, when the Constitution permits forty-three other States to refrain from offering straight ticket voting, does not enforce any constitutional requirement. *See* ECF 42-2 at 2–5; ECF 32 at 30.

### 2.      Section 2 Does Not Cover HB 25

Repealing straight ticket voting is not a "voting qualification or prerequisite to voting or standard, practice, or procedure." 52 U.S.C. § 10301(a). Straight ticket voting aggregates elections by asking voters whether they support all candidates from one party. Ballots without straight ticket voting ask voters about each candidate individually. The Supreme Court has long recognized that "[t]he discretionary decision to submit one or more questions to the electorate is one properly left to the political process." *Lucas v. Townsend*, 698 F. Supp. 909, 912 (M.D. Ga. 1988), *aff'd*, 493 U.S. 1052 (1990). It "is not a standard, practice or procedure affecting voting." *Id.* For that reason, Section 2 does not apply to HB 25. *See* ECF 32 at 27.

Plaintiffs' citations to cases that did not consider *Lucas* or the scope of Section 2 do not change

this analysis. *See* ECF 47 at 28–29. But even if Plaintiffs were right that "STV is clearly a method of casting a ballot" and therefore "a voting 'procedure,'" ECF 47 at 28, Section 2 still would not cover their claim. HB 25 *repeals* straight ticket voting. It does not "impose[] or appl[y]" straight ticket voting. 52 U.S.C. § 10301(a).

### 3.   Plaintiffs Do Not Have a Private Cause of Action

Section 2 does not imply a private cause of action for non-voters. *See* ECF 32 at 30–32. "An implied cause of action is available only to 'the particular plaintiff' in whom 'the statute creates rights.'" *Id.* at 31 (quoting *Delancey v. City of Austin*, 570 F.3d 590, 593 (5th Cir. 2009)). Plaintiffs do not dispute this general proposition, and they do not allege that they are voters. Because Section 2 does not create any rights in those who do not intend to vote, Plaintiffs do not have a cause of action.

Plaintiffs' response rests entirely on legislative history. *See* ECF 47 at 30–31. *Alexander v. Sandoval* precludes such reliance on legislative history by requiring courts to focus on "the text and structure of" the statute. 532 U.S. 275, 288 (2001). Plaintiffs offer no textual or structural arguments.

To be sure, "decisions before *Sandoval* frequently implied private rights of action without rigorous analysis; they did so by making a somewhat cursory inspection of the statute and its legislative history." *Conservation Force v. Delta Air Lines, Inc.*, 190 F. Supp. 3d 606, 616 (N.D. Tex. 2016), *aff'd*, 682 F. App'x 310 (5th Cir. 2017) (affirming "[e]ssentially for the reasons stated in the district court's comprehensive and well-reasoned opinion"). But such pre-*Sandoval* opinions "are not binding nor persuasive." *Id.* (declining to follow a pre-*Sandoval* Fifth Circuit opinion).

Plaintiffs cite a few district court opinions, but none is persuasive. *See* ECF 47 at 31. *Frank v. Walker* considered an argument about "the zone of interests of Section 2," 17 F. Supp. 3d 837, 867 (E.D. Wis. 2014), *rev'd*, 768 F.3d 74 (7th Cir. 2014), not an argument about relying "on the rights of third-party voters." ECF 32 at 31. Those are distinct issues. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 n.3 (2014). Further, both *Walker* and *One Wisconsin* are unpersuasive

on this point because those courts seem to have thought they were interpreting an express cause of action rather than finding the limits of an implied cause of action. *See Walker*, 17 F. Supp. 3d at 867; *One Wis. Inst., Inc. v. Nichol*, 186 F. Supp. 3d 958, 968 (W.D. Wis. 2016). Finally, the analysis in *Veasey v. Perry*, 29 F. Supp. 3d 896 (S.D. Tex. 2014), has been undermined by subsequent Supreme Court precedent. *Veasey* relied on *Allen v. State Board of Elections*, *see Veasey*, 29 F. Supp. 3d at 906 (citing 393 U.S. 544 (1969)), but since then the Supreme Court has expressly abandoned *Allen*'s reasoning. *See* ECF 32 at 32. Also, *Veasey* relied on a series of cases in which the private-cause-of-action issue "merely lurk[ed] in the record, neither brought to the attention of the court nor ruled upon." *Cooper Indus.*, 543 U.S. at 170; *see Veasey*, 29 F. Supp. 3d at 906–07. Those cases "are not to be considered as having been so decided as to constitute precedents." *Cooper Indus.*, 543 U.S. at 170.[11]

### C.    HB 25 is Neutral and Does Not Discriminate

The Secretary previously argued that Plaintiffs affirmatively pled a "lack of discriminatory intent" by alleging "that the Legislature 'turned a blind eye to concerns regarding this disparate impact on minority voters.'" ECF 32 at 32–33 (quoting ECF 16 ¶ 110). Doubling down, Plaintiffs argue that the Legislature "refus[ed] to examine the law's disparate effect." ECF 47 at 34. This is fatal to a claim of intentional discrimination. Legislators who steadfastly ignored or "flatly denied" disparate impacts could not have voted "because of, not merely in spite of," those alleged impacts. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). "The phrase 'discriminatory intent' is one that requires more than a mere disregard of the potential consequences of a policy decision." *Jay v. Harris*, No. 3:07-cv-1544, 2007 WL 2019563, at *3 (N.D. Cal. July 9, 2007).

---

[11] Plaintiffs assert "Plaintiff Ms. Bruni is a resident of Laredo Texas, and a Hispanic voter who in the past has relied on straight ticket voting." ECF 47 at 32 n.11. The complaint does not allege any of that information. If Plaintiffs wish to rely on it, they must plead it. Even if they did so, Plaintiff Bruni still would not have an implied cause of action. *See* ECF 32 at 30–31 n.30.

Moreover, there is no disparate impact. Straight ticket voting "is utilized by a vast majority of Texans," regardless of race. ECF 16 ¶ 26. Plaintiffs apparently agree that they "do not (and cannot) allege that most users of straight ticket voting were racial minorities." ECF 32 at 34. Plaintiffs try to avoid the consequences of this concession by suggesting that "the burdens that minority voters will face as a result of HB 25 will be more *severe* than the burdens faced by white voters." ECF 47 at 35. But again, Plaintiffs argue only that minority voters "disproportionately" face "severe" burdens, not that most of the voters allegedly facing "severe" burdens are minorities. *Id.* at 34–35. That cannot suffice for the reasons already explained. *See* ECF 32 at 34–35.

Plaintiffs cannot seriously maintain that forty-three other States prohibit straight ticket voting for race-neutral reasons but that Texas has joined that nationwide consensus for discriminatory reasons. *See* ECF 32 at 32–36.

### D.   Plaintiffs' Viewpoint-Discrimination Claim Fails

Since *Carrington v. Rash*, 380 U.S. 89 (1965), the theory of partisan fencing has been significantly limited. *See* ECF 32 at 36. Plaintiffs do not dispute that. Indeed, they do not cite a single other partisan fencing case granting relief, and they do not respond to any of the cases that the Secretary cited. *See id.* at 36–37.

Plaintiffs ask this Court to apply the *Arlington Heights* framework rather than the *Anderson-Burdick* framework, *see* ECF 47 at 35–36, but they ignore the recent Arizona case rejecting that argument raised by some of the same Plaintiffs represented by some of the same counsel. *See Feldman v. Ariz. Sec'y of State's Office*, 208 F. Supp. 3d 1074, 1094 (D. Ariz. 2016) (collecting cases applying *Anderson-Burdick* and noting "the dearth of authority for treating party affiliation as a suspect class"). Applying *Arlington Heights* would be incongruous with *Crawford*'s recognition that a statute is not unconstitutional "simply because partisan interests may have provided one motivation for the votes of individual legislators." 553 U.S. at 204 (plurality). Regardless, HB 25 would pass an *Arlington Heights*

analysis for the reasons already briefed. *See* ECF 32 at 32–37; *supra* Part IV.C.

Last, trying to avoid the political question doctrine, Plaintiffs rely on the district court opinion in *Jacobson*, *see* ECF 47 at 36, but the Eleventh Circuit vacated that opinion because "the district court took its obligation to ensure its jurisdiction far too lightly." *Jacobson*, 2020 WL 2049076, at *4. Although the majority did not reach the issue, one circuit judge wrote separately to explain how the district court's jurisdictional errors extended to the political question doctrine. *See id.* at *14–22 (Pryor, W., J., concurring). He persuasively rebutted Plaintiffs' suggestion that *Rucho*'s reasoning is limited to "partisan gerrymandering." ECF 47 at 37.

## V.     Laches and Unclean Hands Bar Plaintiffs' Claims

Plaintiffs argue laches does not apply because they "seek[] prospective relief." ECF 47 at 37. That contradicts binding and persuasive precedent. *See, e.g.*, *Ancient Egyptian Arabic Order of Nobles of the Mystic Shrine v. Michaux*, 279 U.S. 737, 748–49 (1929); *White v. Daniel*, 909 F.2d 99, 102–03 (4th Cir. 1990). Plaintiffs also argue that the prejudice to other Texans is irrelevant because the Secretary is the only defendant. *See* ECF 47 at 37–38. On the contrary, because the Secretary is a defendant in her official capacity, her "interest and harm merge with that of the public." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam). Finally, Plaintiffs suggest their delay in filing suit was justified by uncertainty about "whether the Secretary would provide counties funding to mitigate the law's expected harms." ECF 47 at 38. Whether the Secretary would provide funding is irrelevant. Local governments have their own budgets. Plaintiffs cannot argue that uncertainty about local officials' "mitigation efforts" caused the delay because that uncertainty has not lessened. Thus, if Plaintiffs had really been waiting for information on local decisions, they would still be waiting.

Plaintiffs argue that the doctrine of unclean hands does not apply to constitutional claims, *see* ECF 47 at 39, but precedent is to the contrary. *See Sullivan v. Hous. Indep. Sch. Dist.*, 475 F.2d 1071, 1077 (5th Cir. 1973) ("[W]e ask only that the student seeking equitable relief from allegedly

unconstitutional actions by school officials come into court with clean hands."); *Arellanes v. United States*, 353 F.2d 270, 273 (9th Cir. 1965); *Thompson v. Spear*, 91 F.2d 430, 434 (5th Cir. 1937). The doctrine applies in First Amendment cases like this one. *See Blankenship v. Blackwell*, 341 F. Supp. 2d 911, 924 (S.D. Ohio 2004) (barring a plaintiff with unclean hands from bringing a First Amendment challenge to an election law). Plaintiffs' claim that the Supreme Court discourages applying "common-law barriers to relief" in a "suit serves important public purposes" is wrong; they quote the dissent, not the majority. ECF 47 at 39 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 654 n.21 (1985) (Stevens, J., dissenting)).

Plaintiffs do not deny their connection to the sordid white primary system. Instead, they claim it is irrelevant to their current claims. *See* ECF 47 at 39–40. But Plaintiffs themselves inserted the history of TDP's white primary into this case. Having discussed the white primary system in their complaint, *see* ECF 16 ¶¶ 71–73, they cannot now argue it is irrelevant to their claims. Plaintiffs also argue the Secretary is not prejudiced by their inequitable conduct. *See* ECF 47 at 39. On the contrary, Plaintiffs argue that Texas's "history of discrimination" is part of what makes HB 25 unconstitutional and that it strengthens their claims. *E.g.*, ECF 47 at 21, 26. To the extent the Court agrees, that prejudices the Secretary in this litigation. The doctrine of unclean hands prevents Plaintiffs from receiving such a litigation advantage based on their own unconstitutional conduct.

## CONCLUSION

The Secretary respectfully requests that the Court grant her motion to dismiss or, in the alternative, grant her motion to transfer venue.

Date: May 8, 2020

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General
Texas Bar No. 24045446
Southern District of Texas No. 641892

Respectfully submitted.

PATRICK K. SWEETEN
Associate Deputy for Special Litigation

*/s/ Todd Lawrence Disher*
TODD LAWRENCE DISHER
Deputy Chief, Special Litigation Unit
*Attorney-in-Charge*
Texas Bar No. 24081854
Southern District of Texas No. 2985472

WILLIAM T. THOMPSON
Special Counsel
Texas Bar No. 24088531
Southern District of Texas No. 3053077

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 936-1414
Fax: (512) 936-0545
ryan.bangert@oag.texas.gov
todd.disher@oag.texas.gov
will.thompson@oag.texas.gov

**COUNSEL FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2020, I electronically filed the foregoing document through the Court's ECF system, which automatically serves notification of the filing on counsel for all parties.

*/s/ Todd Lawrence Disher*
TODD LAWRENCE DISHER